**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Criminal Case No. 18-cr-117-WJM

UNITED STATES OF AMERICA,

     Plaintiff,

v.

**2.    JESUS ANTONIO GARCIA-MARTINEZ,**

     Defendant.

---

**ORDER GRANTING MOTION FOR DISCLOSURE OF CONFIDENTIAL INFORMANT**

---

The Government charges Defendant Jesus Antonio Garcia-Martinez ("Defendant") with conspiracy to distribute heroin, and also with possessing heroin with intent to distribute. Currently before the Court is Defendant's Motion for Disclosure of Confidential Informant. (ECF No. 67.) For the reasons explained below, the Court grants this motion, with certain conditions.

## I. BACKGROUND

The Government alleges that the confidential informant ("CI") was stopped on the highway in Utah by the Utah State Patrol on February 18, 2018. (ECF No. 63 ¶ 1.) Somehow those officers learned that the purpose of the CI's travels was to transport seventeen pounds of heroin from California to Denver. (*Id.*) He had made this same trip, with the same purpose, many times before, having most recently made a delivery four days earlier. (ECF No. 73 ¶¶ 6, 16.) The CI agreed to cooperate with law enforcement (that is, to become a CI) and was handed off to the Drug Enforcement

Administration ("DEA") so that the DEA could orchestrate a controlled delivery of the CI's heroin at its destination in Denver.  (ECF No. 63 ¶ 1.)

The controlled delivery took place the following day, February 19, 2018, at an apartment in Lakewood, Colorado.  (*Id.* ¶ 2.)  The CI wore a body wire to transmit the sounds from inside the apartment to the DEA.  (*Id.*)  The DEA also treated the outside of the heroin packages with a substance that shows up under black light.  (ECF No. 73 ¶ 10.)

When the CI entered the Lakewood apartment, Gilberto Guerrero-Flores (who became the first-named defendant in this prosecution) was already there.  (*Id.* ¶ 8.)  A call was then placed from Guerrero's phone to Defendant's phone.  (*Id.*)  Soon after, DEA agents observed Defendant approaching and then entering the same apartment.  (*Id.* ¶ 9.)

About five minutes later, the CI left the apartment and DEA agents moved in.  (*Id.* ¶ 10.)  A black light revealed the substance with which the heroin packages had been treated on both Guerrero's and Defendant's hands.  (*Id.*)  The DEA also retrieved $7,000 in cash from the CI, who reported that he had received $3,000 from Guerrero and $4,000 from Defendant while inside the apartment.  (*Id.* ¶ 11.)

In post-arrest interviews, Guerrero essentially corroborated the CI's story.  (*Id.* ¶ 12.)  Defendant, for his part, admitted picking up one of the heroin packages but "denied involvement in drug trafficking and stated he was in the United States to buy bicycles to send back to Mexico."  (*Id.* ¶ 13.)

## II.  ANALYSIS

"Due to the strong public interest in furthering effective law enforcement, the

government enjoys a privilege to withhold from disclosure the identity of persons who furnish law enforcement officers with information on criminal acts. While anonymity encourages citizens to communicate their knowledge of unlawful activity, the privilege must give way to fairness when disclosure of the informer's identity 'is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause.' The need for disclosure depends on the 'particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.'" *United States v. Mendoza-Salgado*, 964 F.2d 993, 1000 (10th Cir. 1992) (quoting *Roviaro v. United States*, 353 U.S. 53, 60–62 (1957)). To carry the burden of requiring such disclosure, a defendant "must present more than mere speculation about the possible usefulness of an informant's testimony." *United States v. Moralez*, 908 F.2d 565, 567 (10th Cir. 1990).

The Tenth Circuit has endorsed the Fifth Circuit's articulation of two poles between which most requests for disclosure of confidential information will fall: "At one extreme are the cases where the informant is a mere tipster, and disclosure is not required. At the other extreme are cases such as *Roviaro* itself where the informant has played a crucial role in the alleged criminal transaction, and disclosure and production of the informant are required to ensure a fair trial. In addition, there are cases where there is a slight possibility a defendant might benefit from disclosure, but the government has demonstrated a compelling need to protect its informant." *Id.* at 568 (citing, *inter alia*, *United States v. Fischer*, 531 F.2d 783, 787 (5th Cir.1976)).

This case is plainly one where the informant has played a crucial role in the alleged criminal transaction. Excluding Defendant himself, the CI was one of only two

eyewitnesses to what actually happened in the Lakewood apartment. Both of them conceivably have a motive to place blame on Defendant, thereby potentially securing the Government's agreement to leniency. The Court understands that Defendant's story about being a bicycle dealer in the wrong place at the wrong time seems far-fetched. However, the CI says that he had made numerous of these drug courier journeys to Denver, and so could conceivably offer longitudinal information that could assist in Defendant's defense at least against the conspiracy charge. He may also be able to offer information about the extent to which Defendant and Guerrero can be deemed to have conspired.

At a minimum this is a case where there is a slight possibility that Defendant might benefit from disclosure and the Government has *not* demonstrated a compelling need to protect the CI. *See Moralez*, 908 F.2d at 568. The Government's only statement in support of its interest in nondisclosure is the generic assertion that "[t]he dangers for a civilian who acts in support of law enforcement in a large-scale heroin case are hard to exaggerate. The Government respectfully asks the Court to give consideration to the potential consequences of publishing the name of such a cooperator unless it is truly necessary to do so." (ECF No. 73 ¶ 1.) Under the circumstances, the danger of having one's identity revealed—which is present in nearly every case—is not enough to overcome Defendant's interest in a fair trial. Moreover, the Court has no intent to "publish" the CI's name. The Court will order that the Government must disclose the CI to Defendant's counsel but that Defendant's counsel is prohibited from disclosing that name to Defendant himself without prior Court authorization.

### III.  CONCLUSION

Defendant's Motion for Disclosure of Confidential Informant (ECF No. 67) is GRANTED to the following extent:

The Government must disclose the identity of the CI to Defendant's counsel by no later than **December 17, 2018**.   Defendant's counsel, however, may not further disclose the CI's identity except to counsel's agents, investigators, office staff, and any other person working on counsel's behalf in furtherance of Defendant's defense, and only if that person legitimately needs to know the CI's identity for purposes of preparing Defendant's defense.  Defendant's counsel and any other person to whom counsel has disclosed the identity are specifically PROHIBITED from disclosing that identity to Defendant without prior authorization from this Court upon a showing of good cause.

Dated this 13th day of December, 2018.

BY THE COURT:

William J. Martinez
United States District Judge